IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

NORTH RIVER INSURANCE COMPANY,
a New Jersey corporation,

    Plaintiff,

v.                                                                                                                                   No. CIV-01-231 WJ/DJS

AMERICAN HOME ASSURANCE COMPANY,
a New York corporation; NATIONAL UNION FIRE
INSURANCE COMPANY OF PITTSBURGH, a
New York corporation,

    Defendants.

**MEMORANDUM OPINION AND ORDER ON**
**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

THIS MATTER comes before the Court pursuant to Plaintiff North River Insurance Company's Motion for Partial Summary Judgment as to Count IV of Defendants' First Amended Counterclaim [Docket No. 109].

**FACTUAL AND PROCEDURAL BACKGROUND**

On March 2, 1999, a single bus accident occurred near Santa Fe, New Mexico. Two persons were killed in the accident and several others were injured. The passengers on the bus were school children and chaperones participating in an after school ski program at the Santa Fe Ski Area which is operated by the Santa Fe Ski Company (SFSC). The bus providing the transportation was owned and operated by Shuttlejack, Inc.

Complaints were filed in New Mexico state court on behalf of several of the injured passengers as well as the estates of the two persons killed in the accident, and the cases were consolidated into one action styled In the Matter of the Shuttlejack Litigation No. D-0101-CV-

990797. One of the named defendants in the state litigation was SFSC. Plaintiffs in the state case alleged that SFSC was engaged in a joint venture or joint enterprise with Shuttlejack, Inc. in connection with the after school ski program and sought damages from SFSC for wrongful death, hedonic damages, loss of enjoyment of life, past and future medical expenses, loss of earning capacity, loss of consortium and punitive damages for bodily injuries arising from the bus accident.

At the time of the accident, North River Insurance Company (North River) was the automobile liability insurer for SFSC, American Home Assurance Company was the general liability insurer for SFSC and National Union Fire Insurance was the commercial liability umbrella insurer for SFSC. North River argues that it had no notice of the state litigation until November 2000 when American Home and National Union (collectively AIG) made a demand on North River for participation in defense and indemnification and that SFSC did not request defense and indemnity until January 2001. North River provided counsel for SFSC sometime in January 2001 under a strict reservation of rights. A reservation of rights letter was sent by North River to SFSC on January 10, 2003. On February 28, 2001, North River filed this declaratory judgment action against AIG seeking a determination by this Court that there was no coverage for the Shuttlejack accident under the North River automobile liability policy.

North River sent an attorney to a January 11, 2001 mediation conference for the underlying state litigation. The attorney, Ms. Vigil,[1] appeared at the conference but left after a

---

[1] Counsel for AIG represents that Ms. Vigil was coverage counsel for North River and had been given no settlement authority. However, the record does not sufficiently support this contention. In a deposition of Mary Bozack of Willis, New Hampshire, the attorney who attended the mediation conference is referred to as "Christy Vigil." In a North River internal e-mail (the admissibility of which is hotly contested and highly suspect), the coverage counsel is

2

conversation with Joe McClaugherty, counsel for SFSC. Another mediation was held on May 3, 2001. SFSC demanded that North River participate in that mediation up to the full limits in the auto policy. Mark Riley, the attorney retained by North River to defend SFSC, attended the May 3, 2001 mediation. However, he was given no settlement authority and was directed to take a "no-pay" position.

North River provides claims manuals to new employees and employees were provided with ongoing training. North River employees were taught how to find and use the claims manual. North River was provided information on the third party claim by AIG. The evidence shows that North River was provided with a Mediation Position Statement drafted by the third party claimants, letters from AIG and Willis of New Hampshire, and copies of nine complaints filed in state court by the third party claimants. AIG contends that North River did not actively seek any additional information on the third party claims beyond what it had been provided by AIG.

The reservation of rights letter that North River sent to SFSC on January 10, 2001 contains two pages of language from the auto policy regarding 1) the need for the insured to read the policy carefully; 2) definitions of the words "you," "your," "we," "us," and "our;" 3) the statement that other words in the policy that are within quotations have special meaning and should be looked up in the definitions section of the policy; 4) some of the policy language regarding liability coverage including the language that the insurer "will pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this

---

referred to as "cathy Vigil in the hatch firm" [sic]. The Court cannot infer that these persons are one and the same. Nor may the Court infer that Christie Vigil had no settlement authority at the January 2001 mediation conference.

insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto;'" 5) language informing an insured that the insurance company may investigate and settle any claim and that the duty to defend and indemnify ends when the insurance limit has been paid; 6) language defining who is an insured, the definition of an "auto," and the definition of an "insured;" and 7) portions of the policy language for "covered auto" regarding temporary substitute autos.  The letter does not contain the policy language giving the nine descriptions of "Covered Auto Designation Symbols."

The letter states that "The Policy does not provide coverage for any of the allegations contained in the Consolidated Lawsuits because the bus involved in the accident was not owned, maintained or used [by] Santa Fe Ski."  The letter also states that there is no coverage because the bus driver was not an employee of SFSC.  The letter further states that North River will defend SFSC under a reservation of rights.

AIG settled the state litigation on behalf of SFSC.  SFSC assigned to AIG all rights it may have against North River arising from the auto policy, the accident, and North River's conduct in connection with the Shuttlejack litigation.  In this declaratory judgment action, Defendants AIG filed a counterclaim seeking a declaratory judgment that North River had a duty to defend and indemnify, alleging that North River breached its contractual obligations under the auto policy, seeking contribution and reimbursement for defense costs, and seeking subrogation and indemnity.  AIG amended its counterclaims to add a counterclaim for violations of the New Mexico Unfair Claims Practices Act, N.M. Stat. Ann. 1978 § 59A-16-20.  Specifically, AIG alleges that North River violated Section 59A-16-20(C) by failing to adopt and implement reasonable standards for the prompt investigation and processing of an insureds' claims arising

under the policies because North River failed to timely investigate and fairly evaluate the claims against SFSC; Section 59A-16-20(E) by not attempting in good faith to effectuate prompt, fair and equitable settlements of an insured's claims in which liability has become reasonably clear because North River refused to contribute anything toward settlement when North River's liability under the automobile policy was reasonably clear; and Section 59A-16-20(N) by failing to promptly provide an insured a reasonable explanation of the basis relied on in the policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement because North River failed to provide SFSC and AIG with a reasonable explanation of the basis relied on in the automobile policy for North River's position that it had no duty to defend or indemnify SFSC. Plaintiff North River filed the instant motion seeking summary judgment on this counterclaim.

**LEGAL STANDARD**

Summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The burden of showing an absence of a genuine issue of material fact falls upon the moving party. See Adler v Wal-Mart Store, Inc., 144 F.3d 664, 670 (10th Cir. 1998). In ruling on a motion for summary judgment, a Court does not weigh the evidence, but determines whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. Jeffries v. State of Kansas, 147 F.3d 1220, 1228 (10th Cir. 1998). In making this determination, the Court must construe all the facts in the record and reasonable inferences that can be drawn from those facts in a light most favorable to the nonmoving party. Worrell v. Henry, 219 F.3d 1197, 1204 (10th Cir. 2000); Jeffries, 147 F.3d at

1228. A fact is "material" if, under the governing law, it could have an effect on the outcome of the lawsuit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Hardy v. S.F. Phosphates Ltd. Co., 185 F.3d 1076, 1079 (10th Cir. 1999).

**PRELIMINARY MATTERS**

This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §1332. The parties to this case have been through a lengthy discovery process in both state and federal court. They are well aware of the factual nuances involved in this claim. The Court does not have the benefit of the parties' knowledge base and may only refer to the record to determine the facts. Additionally, the Court should not have to dig through evidentiary debris to glean background information. There are persons and entities whose relationships to this case, though apparently obvious to the parties, are a mystery to the Court. As an example, there is deposition testimony of Mary Bozack attached as an exhibit to Plaintiff's Memorandum in Support of its Motion for Partial Summary Judgment. Within Plaintiff's Memorandum, Plaintiff mentions that Ms. Bozack is the Senior Claims Specialist for Willis of New Hampshire. What the Court has not been able to find in the record after a reasonable search is an explanation or description of the Willis of New Hampshire entity and its relationship to a party or the facts of this case. Counsel should consider themselves on notice that I cannot read minds. Moreover, even when inclined to undertake the task of finding a needle in a haystack, I am often unable to locate the object of the search.

The Court also notes that parties may lack a clear understanding of what has already been decided by this Court and the remaining issues in this case. In the Statement of Additional Material Facts ¶ 28 of Defendants' Response, AIG asserts that the North River Auto policy does

6

not limit coverage to vehicles that are owned, maintained or used by SFSC.  North River's Reply disputes this and urges that coverage is for any auto that is owned, hired, borrowed or used by the named insured.  This issue has largely been determined.  In the Court's Memorandum Opinion and Order filed November 22, 2002 [Docket No. 72] at pages 9 through 10, this Court found that an injury caused by an accident resulting from the use of **any auto** would be covered under the North River policy if the auto was being used in connection with SFSC's business and that the policy does not limit coverage to vehicles that are owned, maintained or used by SFSC.  The Court went on to state that the determination of whether there was coverage of the Shuttlejack incident hinges on whether the Shuttlejack bus was being used in connection with SFSC's business, that there is an issue in this case whether Shuttlejack and SFSC were engaged in a joint venture or a joint enterprise, and that the issue is one of fact to be determined at trial.  The Court clearly narrowed the coverage issue when it found that, "[i]f a fact finder determined that there was a joint venture or enterprise, this would be a sufficient nexus between SFSC and Shuttlejack such that SFSC had some legal responsibility for the use of the Shuttlejack bus, [and] the Shuttljack bus would be a covered auto."  Docket No. 72, p. 11.  To clarify further, the only issue regarding coverage is whether the Shuttlejack bus was being used in connection with SFSC's business.

     To preempt any future confusion regarding North River's duty to defend, the Court reminds the parties that the November 11, 2002 Memorandum Opinion and Order found that North River had a duty to defend.  Docket No. 72, p. 8.  There are issues of fact regarding when North River had sufficient notice of the state litigation to give rise to the duty to defend, and when and/or whether North River met its obligations under its duty to defend.  Id.  There is also

7

an issue of law regarding whether the duty to defend arises only upon notice by the insured. Id.

**DISCUSSION**

The Unfair Claims Practices Act (UCPA), found at N.M. Stat. Ann. 1978 §§ 59A-16-20 et seq. provides that fifteen specific practices with respect to claims, by an insurer or other person, knowingly committed or performed with such frequency as to indicate a general business practice, are defined as unfair and deceptive practices and are prohibited. N.M. Stat. Ann. 1978 § 59A-16-20. AIG alleges that North River committed three of the fifteen prohibited practices in violation of the Act.

I.  DEFENDANT'S COUNTERCLAIM FOR VIOLATION OF N.M. STAT. ANN. 1978 § 59A-16-20(C).

Section 59A-16-20(C) of the UCPA provides that the practice of failing to adopt and implement reasonable standards for the prompt investigation and processing of insureds' claims arising under policies is a prohibited unfair and deceptive claims practice when knowingly committed or committed with such frequency as to indicate a general business practice.

Both parties cite to G & G Servs., Inc. v. Agora Syndicate, Inc., 993 P.2d 751 (N.M. App. 2000) as the controlling interpretation of Section 59A-16-20(C) and an insurer's duty to investigate. The Court is aware of a Tenth Circuit case that also interprets 59A-16-20(C). See Valley Improvement Assoc., Inc. v. United States Fid. and Guar. Corp., 129 F.3d 1108 (10th Cir. 1997). These cases are in direct conflict in their interpretation of the subsection's applicability to third party claims. In Valley Improvement, the Tenth Circuit held that Section 59A-16-20(C) would be interpreted by the New Mexico courts as applying only to first-party claims by the insured and not an insured's demand for defense of a third-party claim. 129 F.3d at 1123. In

G & G Services, the New Mexico Court of Appeals discussed the Tenth Circuit decision in Valley Improvement and came to the conclusion that the duty to investigate claims applies to an insured's demand for defense of third-party claims. 993 P.2d at 757.

A federal court sitting in diversity must determine issues of state law as it believes the highest state court would decide them. Clark v. State Farm Mut. Auto. Ins. Co., 319 F.3d 1234, 1240 (10th Cir. 2003). In determining issues of state law, the federal courts are not bound by the decisions of a state's intermediate appellate court. Id. However, this federal district court is bound by Tenth Circuit precedent. United States v. Spedalieri, 910 F.2d 707, 709 n. 2 (10th Cir.1990). While the decisions of a state intermediate appellate court are some evidence of how a state supreme court would decide an issue and a federal district court may normally consider them as such, Clark, 319 F.3d at 1240, this Court may not consider G & G Services to the extent it is in conflict with Valley Improvement, which is presently controlling Tenth Circuit precedent. See Perez v. Brown & Williamson Tobacco Corp., 967 F.Supp 920, 926 (S.D. Tex. 1997) (a federal district court's adherence to an "Erie guess" from the controlling circuit court is appropriate even when a state's intermediate level appellate court has issued a decision inconsistent with the circuit court's resolution of state law); But see  Nussbaum v. Mortgage Serv. America Co., 913 F.Supp. 1548, 1554 (S.D. Fla. 1995) (a federal district court is not obligated to follow circuit precedent on an issue of state law once an intermediate state court maintains a contrary position). Given the Tenth Circuit's interpretation in Valley Improvement that Section 50A-16-20(C) does not apply to an insured's demand for defense of a third party claim, I conclude that North River is entitled to summary judgment with regard to AIG's counterclaim to the extent it is based on the assertion that North River violated Section 59A-16-20(C).

Even if I were to determine that this Court could follow the interpretation of the New Mexico Court of Appeals in G & G Services that Section 59A-16-20(C) applies to third party claims, I would conclude that North River is entitled to summary judgment to the extent AIG's counterclaim alleges a violation of that subsection of the UCPA. In G & G Services, the New Mexico Court of Appeals held that "an insurance company is required to conduct such an investigation into the facts and circumstances underlying the complaint against its insured as is reasonable given the factual information provided by the insured or provided by the circumstances surrounding the claims in order to determine whether it has a duty to defend." 993 P.2d at 757. The court in G & G Services stated that an insurance company cannot rest its determination of its duty to defend solely on the allegations in the third party claimant's pleadings. Id. at 758. However, an insurance company does not have a sweeping duty to investigate regardless of the circumstances. Id. at 757.

In this case, North River had the third party pleadings, the third parties' Mediation Position Statement, and other documents. AIG does not point to any information that North River could have but failed to obtain that would have altered its position on its duty to defend or indemnify SFSC with regard to the third party claims. Indeed, AIG vice president Francine DeLuca testified that the information given to North River by AIG was sufficient information for North River to make a coverage determination. North River's coverage position was based not on a lack of factual data on the third party claims, but on an interpretation of the auto policy that differed from the interpretation of AIG and, ultimately, this Court. For these reasons, I conclude that, even viewing the facts in a light most favorable to AIG and assuming that Section 59A-16-20(C) applies to third party claims, North River did not violate Section 59A-16-20(C).

II.       DEFENDANT'S COUNTERCLAIM FOR VIOLATION OF N.M. STAT. ANN. 1978 § 59A-16-20(E).

Section 59A-16-20(E) of the UCPA provides that it is an unfair and deceptive practice for an insurer to knowingly or with such frequency as to indicate a general business practice fail to attempt in good faith to effectuate prompt, fair and equitable settlements of an insured's claims in which liability has become reasonably clear.

North River contends that the liability of SFSC was not reasonably clear at the time of the settlement negotiations. Further, they assert that coverage was not then, and is not now, clear, and the UCPA does not address situations in which coverage is disputed. AIG argues that coverage issues do not suspend an insurer's duty under the UCPA.

Subsection 59A-16-20(E) contains no language regarding coverage disputes or any duty of an insured to settle claims of a third party when there is a coverage dispute. However, recent New Mexico case law indicates that the duty to settle is related to the duty to defend. Hovet v. Lujan, 66 P.3d 980, 983 (N.M. App. 2003) cert. granted, No. 27,969 (N.M. April 7, 2003). Thus, the current state of the law would suggest that North River might have a duty under the UCPA to settle when liability is reasonably clear even when coverage is disputed. See also Dairyland Ins. Co. v. Herman, 954 P.2d 56, 61 (N.M. 1997) (citing with approval Johansen v. California State Auto. Assoc., 538 P.2d 744 (Cal. 1974)).

It cannot be said, as a matter of law, that the liability of SFSC was not reasonably clear at the time of the settlement negotiations. SFSC's liability for the underlying third party claims in state court was premised on a theory of joint enterprise or joint venture. Because AIG settled the underlying case on behalf of SFSC, the issue whether SFSC was engaged in a joint venture or

joint enterprise was not determined in the state court. As was clarified above, the duty of North River to indemnify in this case hinges on whether the Shuttlejack bus was being used in connection with SFSC's business, and a showing of joint venture or joint enterprise would show a sufficient nexus between SFSC's business and Shuttlejack. This Court denied summary judgment to either party in this case on the basis that a fact issue exists as to whether the Shuttlejack bus was being used in connection with SFSC's business. Thus, the nature of the connection, if any, between Shuttlejack and SFSC has not yet been determined, and the Court cannot yet determine whether such an alleged connection was reasonably clear at the time the underlying claims were settled. Therefore, disputed issues of material fact preclude summary judgment on AIG's counterclaim insofar as it is premised on a violation of Section 59A-16-20(E).

III. DEFENDANT'S COUNTERCLAIM FOR VIOLATION OF N.M. STAT. ANN. 1978 § 59A-16-20(N)

Section 59A-16-20(N) of the UCPA provides that it is an unfair and deceptive practice for an insurer to knowingly or with such frequency as to indicate a general business practice fail to promptly provide an insured a reasonable explanation of the basis relied on in the policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement.

By the clear language of the statute, a claim under the UCPA for failure to provide a reasonable explanation for a denial of a claim requires a denial of a claim. Here, AIG's counterclaim for violation of Section 59A-16-20(N) asserts that North River effectively, if not formally, denied coverage and thus denied a claim by refusing to pay anything toward the settlement of the third party claims against SFSC. AIG then alleges that North River failed to provide SFSC with a reasonable explanation of its denial of coverage because the only

12

explanation offered was the reservation of rights letter, and the letter does not give a reasonable explanation. AIG does not dispute that the reservation of rights letter itself did not act as a denial of coverage or of claims for purposes of Section 59A-16-20(N). North River requests summary judgment with regard to the alleged violation of Section 59A-16-20(N) on the basis that North River did not deny a claim or deny coverage.

The failure of North River to offer to pay toward settlement of the claims did not, in this case, act as a *de facto* denial of a claim for purposes of the UCPA. North River filed this declaratory judgment action in February 2001, well before the third party claims were settled. AIG essentially argues that the Court must interpret North River's failure to offer to pay part of the settlement as a *de facto* denial. According to AIG, failure to treat North River's refusal to offer its policy limits as a denial of a claim would permit insurers to defend under a reservation of rights, refuse to participate in settlement negotiations, then leave an insured in the position of having to sue the insurer for the amount of a settlement or judgment. In making this argument, AIG ignores the fact that North River filed the declaratory judgment thus eliminating any need on the part of SFSC or AIG to sue North River to seek reimbursement. Because there has been no denial of a claim for purposes of the UCPA, North River is entitled to summary judgment on AIG's counterclaim to the extent it is based on a violation of Section 59A-16-20(N).

**CONCLUSION**

IT IS THEREFORE ORDERED that Plaintiff North River Insurance Company's Motion for Partial Summary Judgment as to Count IV of Defendants' First Amended Counterclaim [Docket No. 109] is hereby GRANTED IN PART to the extent Defendants' First Amended Counterclaim alleges violations of N.M. Stat. Ann. 1978 § 59A-16-20(C) and (N).

IT IS FURTHER ORDERED THAT Plaintiff North River Insurance Company's Motion for Partial Summary Judgment as to Count IV of Defendants' First Amended Counterclaim [Docket No. 109] is hereby DENIED IN PART to the extent Defendants' First Amended Counterclaim alleges a violation of N.M. Stat. Ann. 1978 § 59A-16-20(E).

_____
UNITED STATES DISTRICT JUDGE